So our first case today is case number 5-2405-84, Mennucks, LLC, et al. v. Anne Larson Real Estate, LLC, et al. Good morning, counsel. Justice Barberis, unbeknownst, he'd forgotten, I believe, forgot to tell the clerk he had a seminar scheduled to attend out of state today. So he's not with us. He obviously will watch or listen to the oral arguments, and we will issue our ruling. So I just want to let you know we're only two today. Let's see. Mr. Martinkus, are you ready to proceed? Yes. Then go right ahead. Good morning. Good morning. Good morning. Please report, counsel. We're here in this case because we believe the trial court erred in granting defendant's motion for summary judgment. And in that context, I think it's important for the court to look at the standards that a trial court is to use. These are cited in the brief, but I want to point them out again. In Hutchcraft v. Independent Mechanical Indice, the court stated, summary judgment is a drastic remedy that should be granted only where the movement's right to it is clear and free of doubt. And then in Mounson v. City of Danville, the appellate court stated, quote, in determining whether to grant a request for summary judgment, the trial court strictly construes all evidence in the record against the moving party and liberally in favor of the opponent. And then finally, in Adams, the court said, if a reasonable person could draw divergent inferences from the undisputed material facts or if the material fact remains in dispute, then the trial court should deny the motion. What we have here is we have Dan Manolakis and Wayne Brooks seeking to start a restaurant. And they're looking for places. They finally talk to the defendants in this case. Doug Larson is the primary real estate agent representative of the various defendants. They indicate they want to start a bar restaurant. And the agents send them and give them a brochure which specifically states, this premise is turnkey restaurant space. And that's one of the big issues to the case. What does that mean? Our position has been that whatever turnkey restaurant space means is something that the jury should decide. When plaintiffs filed their suit, they paid their fee. They expected to be able to have this decided by a jury. It was not for the court to determine what that meant. It was for the jury to determine what, in fact, that meant. They signed a lease on April 2013. They opened their business as Orange and Brew Saloon and Grill. The business opened November 2013, and it closed December 2014. What has been alleged is that the reason it closed is because, notwithstanding the representations that this is a turnkey restaurant space, the bar couldn't be used because there was no drainage at all. The sewer underneath had completely collapsed. There were cockroaches emanating from the mud underneath this, and it was dysfunctional. It made the restaurant bar basically non-workable. So after trying for about 13 months, they had to close. And when they filed their suit, basically they claimed fraudulent misrepresentation. They claimed that what, in fact, was known to the defendants was not consistent with the representation, which was this is a turnkey restaurant space. When did they first give notice to the seller that there was a problem with this property? That's a really good question, Judge. I wasn't the trial attorney, so I apologize. I don't know if that was an issue that came up specifically with respect to notice. That I don't know, so I don't want to misrepresent it. Well, I was just curious because I couldn't find it either. Yeah, I know. It was 13 months that they tried to operate the restaurant. I don't disagree with you. They just kind of shifted over a little bit. I don't disagree with you, Honor. But I'm glad you couldn't find it either because that was an issue I tried to look at myself, and I couldn't find it in the record. But it's an excellent question, but I think still the question really becomes, no matter when they presented this to them, was it a misrepresentation when they said, hey, look, this is, in fact, a turnkey operation? You have to also look at what— He kept saying that, well, it might have been okay if it was an Italian restaurant. What did that have to do with the price of it? Nothing. I was very surprised, to be frank with you. Whether or not it was an Italian restaurant, I don't think cockroaches care if it's an Italian restaurant or a bar or grill. It made no sense to me. Did that relate in any way to the as-is condition? I don't think so because the case law is clear. A landlord can't place an as-is provision and then commit a fraudulent misrepresentation. So I don't think the as-is provision in this case has any bearing on anything because a landlord can't isolate himself by putting that in there so that he can then get away with all the fraudulent misrepresentations. So I don't think so. I don't know how it makes a difference whether it was an Italian restaurant or not. Moreover, the actual brochure doesn't say Italian restaurant. It says it's a restaurant. And this was a restaurant and bar. This is exactly what it was. Boutifas ran a restaurant and bar prior there, too. And please keep in mind, too, that there was testimony from Dan Manalakis as to a conversation between John Boutifas, the previous tenant, and the landlord. And specifically, it was very clear that he said that, hey, they were on notice. We told them about the drain out working and so forth. And then if you look at Doug Larson's testimony, he's the agent, he's asked, well, did you know about these problems in 2007? He said, I don't think so. I'm not sure. Then he's asked, well, did the tenants ever repair it? He says no. And is the condition the same then as it was? Yes. So, again, that's a question of fact for the jury. Someone's saying they're not sure if he knows or not is not a definitive statement giving rise to a motion for summary judgment. Well, he admitted, Doug Larson admitted in the fourth amended complaint the answer, that there were discussions. Yes, Judge, you're exactly right. And I don't know at this point, I believe that clearly there is notice and there are inquiry that there was a problem. But do you think the as is eliminates that when you buy it as is? I don't, Your Honor. Because, again, I think this is not a situation where you can walk in and you can see the refrigerator is unplugged and the bar not working. There's no way for someone to know that under the flooring, the sewer system is gone, the pipes are destroyed, the drains don't work, there's cockroaches all over the place. There's nothing, and that really goes to the question of reasonable reliance, where, again, the trial judge erred in my view because the law is clear. Reasonable reliance is a question for the jury. The jury should have been able to determine whether or not it was reasonable. The court said, well, you didn't go and inspect. What would an inspection have done? There's no way that they would have found anything. This was a hidden defect, a defect that only the landlord would have known. And I think there's clear evidence that the landlord did know, and certainly enough evidence to have this case go in front of a jury. So he kind of goes to the point made by opposing counsel about the due diligence, or say the lack thereof, due diligence in doing an inspection, having someone come and look and things such as that. Right, I agree with you. That's the argument. I don't think it holds water for the reason that I think the typical inspection is something that you can see. If you had someone come in and look at this, I don't know in my 47 years of doing this business, I've never seen a case where someone goes in and it's expected to go somehow underneath the flooring and to look to see if sewer pipes exist. That's not reasonable diligence. Reasonable diligence is looking at everything else and making certain that it's up to muster and you can go and have your restaurant. But in light of the representation that this is a turnkey restaurant space, and in light of the fact that there's other evidence in here, too, that Wayne heard Mr. Doug Larson say there's nothing wrong with this business at all. It's ready to go. Those are sufficient facts to permit a jury to listen to this and to determine what, in fact, is reasonable. There was clearly evidence as to knowledge. There's clearly evidence as to reasonable reliance. And there's clearly evidence as to turnkey. And that's got to be a jury question. Even if you looked at what Mr. Matalakis and Mr. Larson said about that, they're not far apart. They said, well, you can go in and maybe just a little bit of work, you can start the restaurant business. It's ready to go. There's not going to be any existing problems. Mr. Larson also talentedly said, why did you use that brochure? Because it enables us to get the tenant better. It puts us in a much better position. So the defendant himself admits that using that term would put them in a very better position. And think about it. We're looking for a business here. My clients are looking for a business. Now they have this old building, the tenant, the landlord saying, it's turnkey representation. You can go in there and start this business now. That's attractive. That's consistent with what Mr. Larson said. It's very attractive to the landlord to acquire a tenant. And that's what they did. I just think it's not reasonable for the court to have not let a jury decide. The jury could make a decision with respect to all of these issues, and the jury should. The defendant's first affirmative defense is that the plaintiff's entered into a settlement agreement and a release. What is that about? Judge, I looked at that, too, and I don't know what that is either, to be honest with you. I don't know what release they did. There was nothing in the record. Right. I apologize. But, again, in some ways, in the same position you are, I'm given a record, and I don't see it either. I don't know what that was either, to be honest with you. But I could not find anything in the record which would support that exact issue. I don't know of any such release. The client hasn't represented that he entered into a settlement agreement? Judge, again, I don't know of any settlement agreement that specifically talks about these issues. And if I missed it, I missed it, but I don't see it. I just didn't. So the question, I think, for this court is to really look at and say, did the trial court err in taking the issue away from the jury? These issues are within the province of the jury. And there was clearly some evidence, and it doesn't have to be overwhelming evidence. It has to be some evidence to support the propositions. There's clearly evidence with respect to turnkey. That's a jury question. The court should never, in my opinion, have decided because it didn't say Italian or it wasn't an Italian restaurant. Some of that negates the proposition that it's turnkey. Reasonable reliance, again, I think that's clearly fundamentally a jury question. And the cases I've cited in my brief support that proposition. The jury should decide whether or not it was reasonable or not reasonable to not have gone in ahead of time and gotten under the crawl space to look at collapsed sewers. I don't see how that's not a jury question. And then with respect to knowledge, the knowledge part, I think, is pretty clear. There's definitely supporting evidence by Mr. Mantelakis in his testimony with respect to Boutique's testimony. They had conversations with this. And then most, I think, important to me at least, is you've got Mr. Larson saying, I don't think so, I don't think I knew about it. How is that conclusive evidence or evidence that would support this? It's not. A jury could have heard all that evidence. It could have been brought out. What did he know? What did he not know? He didn't say specifically. He knew that there wasn't. And moreover, his statements that the tenants never repaired it and that the condition existed when they entered into the lease is incredibly telling. How would you know that if you didn't have some knowledge about the past problems? So, I mean. But you brought this as a fraudulent misrepresentation instead of a breach of contract case. Yes, it was. So we have to have some fraud alleged. Yes. So what is the fraud that you allege? I think the fraud that's alleged is that this is a turnkey operation. This building is ready to be used as a bar and as a restaurant. That's the fraudulent misrepresentation when it clearly was not. You can't run a bar when your drain doesn't work and you can't service it. This is what you do at a restaurant bar. You can't run a bar restaurant when there's no sewer pipes existing and you've got cockroaches coming up through the drain. Most people that I know don't want to see cockroaches when they have their meal. So, again, I think when you look at it in that context, this is a case that should have been left to the jury and the trial court should not have removed it from the province of the jury. When you pay your fee to have a jury trial, our jurisprudence system allows people to have people of their peers make decisions. And the court certainly has the right to make decisions, but not under these circumstances. There is clear evidence to support each element of this claim. This is a claim that should have been left to the jury's decision. And I ask the court, if you reverse this, then it should be have back to the trial court for a jury. Thank you very much. I appreciate the opportunity to orally argue. Do you have any questions? Thank you, sir. Thank you. And actually have your time to vote. Thank you. I plead the court in counsel. Counsel. My name is Rochelle Flunderburg. I represent the defendants on this case. The standard in Illinois for fraud cases is heightened pleading requirements. And you must approve each and every element by clear and convincing evidence. And if you look at this case against that backdrop, they literally had no evidence to refute the motion for summary judgment on any of the elements. If you look at the elements of a common law fraud, which is what they alleged here, you have to have a false statement of material fact. And it appears that the only thing they're relying on is this one sentence or a few words contained in the listing provided by the realtor that said it's a turnkey operation. Well, who gets to decide whether that's fraud or puffing? Who gets to decide that? I think in this case the court clearly found that it was puffing. Why does the court get to make that decision? Isn't that a question of fact? I think not, because those cases have been decided in the past. Is this a mere opinion? And I think that is a question that the court can reach, and I think that's what the judge said here. When you use the word turnkey, it seems that the implication at least, first of all, that's a statement of fact. But it seems that when somebody uses the word turnkey, it means that it's ready to be turned over. So restaurant to restaurant. Sure. So I don't understand how the judge got to puffing versus a statement of fact. So, you know, the interesting thing in this particular case is that this building in Champaign is the old Coke plant. It has a long history in Champaign. Mr. Malachy, who is a realtor, said that he was very familiar with the history of the building, the building itself. It had been operated as an Italian restaurant by Butina, which is, I think, where the judge got that notion. I don't think the judge was saying it's got to be an Italian restaurant to an Italian restaurant. Well, based on his comments, he kind of thought he did. I didn't take it that way, although I'm just – I'm just reading the court records. I get what you're saying, but I didn't take it that way. But the interesting thing here is we – they tried to buy the property, and they couldn't qualify for financing. And in the contract for sale, you know, there were a lot of provisions that – there was an integration clause, a nonreliance clause, you name it, lots of things in that. And then when they couldn't get financing, they ended up with this lease, which is where is, as is. And we had a zipper clause. The interesting thing here is, in terms of turnkey, they took possession in April, and then they started renovating it. And they didn't even open it until 14 months after. So I'm not even sure they considered it to be turnkey, if you think about it like that. The other thing I would say is, you're right, there is nothing in the record about notice. But on the other hand, if this property is so bad that the cockroaches are crawling up the drainpipe and all of that, you would expect, after 14 months, for these people to say, hey, what's going on here? We have this problem, and we don't have any evidence of that. In terms of the statement, I was a little surprised. Mr. Brooks said he never saw this representation by the realtor. He didn't talk to anybody. He didn't hear any representations. Mr. Malachy, I think, must have been the person who took over most of the negotiations. But he said, I did not speak to any member of the Larson family. I don't recall any representations by anyone that did not make it into our agreement. And then he goes on to say, literally, no one made any representations on behalf of Larson. Well, paragraph, or section 5 of the purchase agreement, it says the owners had no knowledge of any violations that would affect the property or its use. So that is a representation. Correct. But the interesting thing here is, what he said was, nothing that we talked about didn't make it into this agreement. And it was a whole agreement. And they're talking about a false statement of a material fact. What they're saying is, my clients must have known there was this problem, and where do we get the source of that information? Opposing counsel said, well, it's because there was all this testimony from John Butita. There was never any testimony from John Butita. The only evidence from John Butita in this record, no affidavit, no deposition, no nothing, was Mr. Mantelocchi saying, when I asked him, what's the source of this information that my clients knew about all of this? John Butita. And I said, okay, how did you come to get that information? I talked to, I think I got it from a manager. And then we go to another element, which is this notion that my client knew because there were repairs to the property and bills. And they asked about that, and I asked about that. And I said, okay, what's the source of your information for that? Well, they got bills. Who told you that? What's your source? A salesperson who thought that he had heard from someone that these bills had been presented. So, really, we don't have any direct evidence of any kind that my clients knew anything about this. We have this sort of second- and third-hand hearsay. I think you can't say that you can avoid a motion for summary judgment based upon information of that kind. Then we get into the idea about what we intended to do. But that's just one element of the factors. Correct. But the judge decided it all. Well, and the interesting point there is what the case law says is that if you fail on any one of the five elements, you fail. Period. So, you know, fraud is a tough thing to prove, plead and prove in the state of Illinois. There are a lot of things that you have to come forward with, and they did not do that. So, even out of the five, if you find that the judge was correct that they failed on one element, they fail. Period. And it doesn't matter what all the other information was. And do you think they failed on all elements? I do. I do. Because, like I say, fraud is a tough standard, not only to plead but to prove, and rightfully so. I mean, you can't just walk in and say, you're guilty of fraud, pay me, you know, a million bucks. In terms of the justifiable reliance, in this case, the judge found that their reliance was not reasonable. And I think what opposing counsel says is that's a question of fact. Actually, it can be a question of law, and I think the judge found that here. And the reason is because these people literally did not do anything, not a single thing, to find out anything about this building. They didn't do an inspection. They didn't talk to any tenants. They didn't do anything. And then basically came in and said, after 14 months of renovating the property, it's a hellhole, and you must have known about it, and so pay me money. And the judge said, under those conditions, it is a question of law that I can decide was this reasonable. It's the Johnson case all over again. You cannot stick your head in the sand and then pop up months down the road and say, oh, I didn't do anything, but somehow it's your fault. Particularly when Mr. Matlocky is a realtor. One would expect something, and they just literally did not do anything. And finally, in terms of the damages, even the judge there found that they did not meet the standard. He said that your damages are too speculative. They're sort of guesstimates. We don't have anything to support them, and you fail on that element as well. So I think in this particular case, there was plenty of evidence in front of the trial court to support his motion for summary judgment. There's just not much you can do to salvage a case when over and over the plaintiffs are saying, I don't know. I don't remember. I never heard that. No one made any representations. It was almost as if they had never seen the complaint or the allegations. I went through the complaint line by line. What's the source of this? I don't know. Did you hear this? I don't know. Did somebody else make a statement? I don't remember. I mean, that's a pretty thin case. They're just, you know, they didn't give the judge much to go on at that point. And so I would say for those reasons, the judge was correct in finding and granting the motion for summary judgment. And we would ask that you refer. Final question? I have the one question about the release. Do you know anything about the release? I do. I have to meet trial counsel on all of that. This is not the only litigation between these parties. There was an eviction case that my clients brought that had a ---- Why is that an affirmative defense to the fraudulent misrepresentation? It's an affirmative defense because of the terms of the agreement, which was that they had ---- There was an agreement that they agreed to make certain payments, and they didn't do it. And we had agreed to finance the arrangement. And I believe there were representations in the agreement itself, but it was not in this particular record. Okay, because nothing was attached to the affirmative defense.  Correct. Okay, so did your client end up evicting them? Yes. Oh, okay. Yes. But that's not in the record. No, and really the trial court did not really make any findings about that or even consider it. Great. Okay, thank you very much. Yes. Thank you. The issue of damages was not a basis on which the Court made its ruling. There was evidence with respect to damages, $300,000 as testified by Mr. Brooks. There's commentary about the pleadings, but the Court states very specifically, while I understand that Illinois requires specificity with fraud, by reading of the Fourth Amendment complaint is that it is sufficiently specific to state a cause of action. So the continued attack on the pleadings has no bearing because the Court already found that it's specific. With respect to the actual brochure, that's almost on point with Steinbrook v. Chicago Medical School, which I quoted in my reply brief. In that particular case, the Court held that the representations in the catalog were sufficient to state a basis of fraud. Akin to this case, the representations in the brochure are sufficient to state a cause of action on fraud. You have someone from April, they send the lease, November they open up. So I don't know either why or maybe there was representations as to the problems, but that's not the issue. The issue is whether or not under these circumstances they meant their situation and case with respect to the pleadings at this level. And I don't believe that there's any issue from my perspective that they did. Mr. Mantelakis and Mr. Brooks testified at length. There was a lot of testimony in support of their positions. Not a case where they knew nothing about it. Mr. Mantelakis said after he looked at that brochure, he would never have signed the lease, had in fact he was aware of the fact that the building itself was not anywhere near to the representations made by the seller. This is a case that simply should be allowed to have a jury trial. Jury can decide these cases. The trial court interposed and took the province of the jury away. We ask that you reverse. Thank you very much. Any questions? Thank you. Thank you. We will take the matter under advisement. We will issue an order in due course.